FILED'08 APR 29 16:32USDC-ORM

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL SCHORR,                                          Civil No. 07-3044-CL

      Plaintiff,                                    REPORT AND RECOMMENDATION

      v.

MICHAEL J. ASTRUE, Commissioner,
Social Security Administration,

      Defendant.

CLARKE, Magistrate Judge.

      Plaintiff Michael Schorr brings this action pursuant to section 205(g) of the Social

Security Act, as amended (Act), 42 U.S.C. § 405(g) and 1383(c)(3), to obtain judicial

review of the Commissioner's final decision denying plaintiff's application for disability

insurance benefits and supplemental security income benefits. For the several reasons

set forth below, the decision of the Commissioner should be affirmed.

## BACKGROUND

      Plaintiff applied for benefits alleging disability commencing September 2, 2004. His

applications were denied. Plaintiff requested a hearing, which was held before an

Administrative Law Judge (ALJ) on August 30, 2006. Plaintiff, represented by counsel,

appeared and testified, as did a lay witnesses, and a vocational expert.  On November 24,

2006, the ALJ rendered an adverse decision, and the Appeals Council denied plaintiff's

request for review.

At the time of the hearing and the ALJ's decision, plaintiff was thirty-eight years old.

Plaintiff has a high school education; he was in special education.  He has relevant past

work experience as a dishwasher, outdoor deliverer, and forest fire fighter.  Plaintiff alleges

disability as of September 2, 2004, based upon right ankle pain and lack of mobility of the

right ankle.  The relevant medical evidence is discussed below.

### STANDARDS

This Court must affirm the Commissioner's decision if it is based on the proper legal

standards and the findings are supported by substantial evidence in the record.  Hammock

v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting

Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The Court considers the

record as a whole, and  weighs "both the evidence that supports and detracts from the

[Commissioner's] conclusion."  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

Where the evidence is susceptible of more than one rational interpretation, the

Commissioner's conclusion must be upheld.  Sample v. Schweiker, 694 F.2d 639, 642 (9th

Cir. 1982). Questions of credibility and resolution of conflicts in the testimony are functions

solely of the Commissioner, Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th Cir. 1971), but

any negative credibility findings must be supported by findings on the record and supported by substantial evidence, Ceguerra v. Sec'y of Health & Human Servs., 933 F.2d 735, 738 (9th Cir. 1991).  The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive.  42 U.S.C. § 405(g).  However, even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  Flake v. Gardner, 399 F.2d 532, 540 (9th Cir. 1968); see also Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Under sentence four of 42 U.S.C. § 405(g), the Court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the claimant to establish disability.  Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

A five-step sequential process exists for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.

3 - REPORT AND RECOMMENDATION

In step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).    In the present case, the ALJ found that plaintiff had not engaged in substantial gainful activity during the period under review.  (Tr. 20.)

In step two, the Commissioner determines whether the claimant has "a medically severe impairment or combination of impairments." If the Commissioner finds in the negative, the claimant is deemed not disabled.   If the Commissioner finds a severe impairment or combination thereof, the inquiry moves to step three. Yuckert, 482 U.S. at 140-41; 20 C.F.R. §§ 404.1520(c), 416.920(c).  In the instant case, the ALJ found that plaintiff's right ankle pain status post fracture and surgery was a severe impairment.  (Tr. 20.) Accordingly, the inquiry moved to step three.

In step three, the analysis focuses on whether the impairment or combination of impairments meets or equals "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds to step four. Yuckert, 482 U.S. at 141.  In this case, the ALJ found that plaintiff's impairments, either singly or in combination, were not severe enough to meet or medically equal any of the listed impairments.  (Tr. 21.)

In step four, the Commissioner determines whether the claimant can still perform his "past relevant work."  If the claimant is so able, then the Commissioner finds the

claimant "not disabled."  Otherwise, the inquiry advances to step five.  20 C.F.R. §§ 404.1520(e), 416.920(e).  The Commissioner must first identify the claimant's residual functional capacity (RFC), which should reflect the individual's maximum remaining ability to perform sustained work activities in an ordinary work setting for eight hours a day, five days a week.  Social Security Ruling (SSR) 96-8p.  The RFC is based on all relevant evidence in the case record, including the treating physician's medical opinions about what an individual can still do despite impairments.  Id.  In this case, the ALJ found that plaintiff retains an RFC,

> to occasionally lift and carry 20 pounds, frequently lift and carry ten pounds, stand and/or walk for six hours in an eight hour day, dit for six hours in an eight hour day, and do unlimited pushing and pulling.  He walks with the assistance of a cane and cannot do prolonged standing or walking.  He can do simple, routine work due to his pain.  He cannot work in hazardous environments such as heights or moving machinery.  He cannot drive.

(Tr. 21.)  The ALJ found that plaintiff could not perform his past relevant work.  (Tr. 25.)  Accordingly, the inquiry moved to step five.

In step five, the burden is on the Commissioner to establish that the claimant is capable of performing other work that exists in the national economy.  Yuckert, 482 U.S. at 141-42; 20 C.F.R. §§ 404.1520(f), 416.920(f).  If the Commissioner fails to meet this burden, then the claimant is deemed disabled.  Here, the ALJ found that plaintiff retained the residual functional capacity to perform jobs which exist in significant numbers in the national economy.  (Tr. 25.)  Therefore, the ALJ found that plaintiff was not under a disability.  (Tr. 19, 26.)

//

5 - REPORT AND RECOMMENDATION

## DISCUSSION

Plaintiff asserts that the ALJ's decision should be reversed and remanded because the ALJ failed to make adequate findings pursuant to Social Security Ruling (SSR) 96-7p. Plaintiff argues that the ALJ erred by (1) failing to properly evaluate his subjective symptoms in accordance with SSR 96-7p by (a) failing to consider that his persistent efforts to obtain pain relief enhanced his credibility, and (b) ignoring various witness statements describing his limitations; and by (2) failing to consider the "observations by our employees" as required by 20 C.F.R. § 404.1529. Plaintiff contends that the vocational expert testified that his limitations, as testified to by him and his lay witnesses would prohibit any successful employment.

### Plaintiff's Testimony

In rejecting a claimant's testimony, the Commissioner must perform a two stage analysis. Smolen v Chater, 80 F.3d 1273, 1281 (9th Cir. 1996); SSR 96-7p. The first stage is the Cotton test. Cotton, 799 F.2d 1403. Under this test a claimant must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. All that is required of the claimant is that he produce objective evidence of an impairment or impairments and show that the impairment or impairments could produce some degree of the symptoms alleged. In addition, there must be no evidence of malingering.

Plaintiff has produced objective evidence of impairments that could reasonably be expected to produce some degree of symptoms resulting in limitations. The ALJ did not

find that plaintiff is malingering.    Therefore, the analysis moves to a credibility determination.

Under the second part of the analysis, the Commissioner must analyze the credibility of a claimant's testimony regarding the severity of claimant's symptoms, evaluating the intensity, persistence, and limiting effects of the claimant's symptoms.  See SSR96-7p.  The Commissioner can reject a claimant's symptom testimony only if she makes specific findings, stating clear and convincing reasons for doing so.  Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993); Smolen, 80 F.3d at 1281-82.  General findings are insufficient; rather, the ALJ must identify what testimony is not credible, and what evidence suggests that the testimony is not credible.  Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998).  The Commissioner cannot reject a claimant's symptom testimony solely because it is not fully corroborated by objective medical findings.  Cotton, 799 F.2d 1403.

In determining a claimant's credibility the Commissioner may consider, for example:

(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. . . . In evaluating the credibility of the symptom testimony, the ALJ must also consider the factors set out in SSR 88-13. . . .  Those factors include the claimant's work record and observations of treating and examining physicians and other third parties regarding, among other matters, the nature, onset, duration, and frequency of the claimant's symptoms; precipitating and aggravating factors; functional restrictions caused by the symptoms; and the claimant's daily activities.

Smolen, 80 F.3d at 1284; SSR 96-7p; 20 C.F.R. §§ 404.1529(c); 416.929(c).

7 - REPORT AND RECOMMENDATION

Here, the ALJ found that plaintiff's allegations concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. He found that plaintiff's complaints were not fully supported by the objective medical evidence, medical opinion evidence, or plaintiff's activities as indicated in the record. He further found that, as to the lay evidence,[1] to the extent it sought to depict plaintiff as totally incapacitated and unable to work, that opinion was contrary to the medical evidence.

On September 2, 2004, was admitted to Merle West Medical Center with a "Severely comminuted right talus fracture with calcaneus fracture" after he fell off a roof. He underwent a closed reduction with placement of external fixator on the right ankle. He was advised by Kevin T. Heaton, D.O., prior to surgery of his treatment options and told that the injury most likely would lead to chronic degenerative changes and could require further surgery down the road. He explained that "ORIF" at that point in time might not be productive; Dr. Heaton felt that plaintiff might require more formal ORIF in the next week or so. Dr. Heaton explained that the potential long-term sequela included further surgery and chronic ankle and foot pain. (Tr. 136-46.)

Plaintiff saw Dr. Heaton on September 8, 2004, for followup. Overall, plaintiff was doing "quite well," although he was having some discomfort but was improving. He denied any back pain, neck pain, or other injuries. On examination, the pin sites were healing appropriately. He had moderate swelling about the ankle and foot with some ecchymotic discoloration that seemed to be resolving. X-rays showed the fixator to be in good

---

[1]    The ALJ included plaintiff's statements and testimony in his discussion of lay evidence. (Tr. 23-25.)

condition. His talus had regained some height and was in satisfactory position, and the fifth metatarsal fractures were nondisplaced. Plaintiff was to return in two weeks and remain absolutely nonweightbearing. (Tr. 151.)

On September 22, 2004, on return to Dr. Heaton, plaintiff was doing "remarkably well" and was not having any specific pain. On exam, plaintiff's foot looked quite good overall. There was mild swelling on the dorsum of the mid foot, and the swelling about the hind foot and ankle was essentially resolved. He had good motion of the toes. Plaintiff was to continue absolutely nonweightbearing status. (Tr. 150.)

On October 21, 2004, plaintiff was doing "pretty well" after his niece stepped on the metatarsal pin a few days before which caused some loosening and increased pain and swelling in his foot. On examination, plaintiff had moderate swelling about the foot. Radiographs revealed that the talar height was maintained, and looked to be healing appropriately. Some demineralization about the foot was noted. A short-leg nonweightbearing cast was applied. (Tr. 149.)

On November 17, 2004, plaintiff was doing "quite well" and denied having any real pain. His cast was removed. There was no significant swelling or sign of other problems. Plaintiff had some stiffness with ankle motion and subtalar motion was a bit stiff. Radiographs revealed the fractures to be healing appropriately. There was some osteopenia, but overall the joint spaces were fairly well preserved. Plaintiff was placed in a Cam boot and instructed to begin weightbearing as tolerated. Plaintiff was to take the boot off several times daily for range of motion. (Tr. 152.)

9 - REPORT AND RECOMMENDATION

Thirteen weeks following the fracture, on December 13, 2004, plaintiff was doing "remarkably well." Plaintiff reported that his ankle continued to improve. Occasionally he had some swelling, mostly at the end of the day. On examination, there was no swelling or discoloration. He had a satisfactory motion of the tibial talar. Radiographs revealed some osteopenia, but otherwise the fracture appeared well healed. There was a mild narrowing of the subtalar joint, but was overall satisfactory. Dr. Heaton encouraged plaintiff to continue with an exercise range of motion program, and was to wear a good supportive shoe. Dr. Heaton would see him in the future with any problems. (Tr. 148.)

A notation in Dr. Heaton's progress notes indicates "3/28/05 No Show." (Tr. 148.)

After detailing Dr. Heaton's treatment of plaintiff and his findings, the ALJ noted that Dr. Heaton's records showed that plaintiff was limited from working for a few weeks after his injury but that he was able to do light work within a few months. The ALJ noted that Dr. Heaton did not tell plaintiff that he needed to continue to wear the walker or to use a cane, and that Dr. Heaton did not rate plaintiff with any functional limits. (Tr. 22.)

In July 2005, plaintiff underwent a consultative examination with Charles D. Bury, M.D. Plaintiff wore a western walker most of the time. Plaintiff reported that, in an eight-hour day, he could stand an hour, sit three-and-one-half hours, walk about fifteen minutes, lift 100 pounds and carry eighty pounds. He could travel without problems. On examination, Dr. Bury stated that plaintiff did not use an ambulatory aid other than a western walker, and did not use crutches or a cane. Plaintiff had normal sensation to light touch of the lower extremities and normal vibratory sense of the lower extremities. Dr.

Bury noted that plaintiff appeared to be rather slow in answers but was cooperative.  Dr. Bury stated that from his examination and discussion, plaintiff was a simple person with below average IQ.  Plaintiff had multiple fibromas over the chest, arms and upper back, and café au lait spots on his upper back and lower back.  As to leg strength, plaintiff was able to show 5/5 quadriceps strength.  He had a stable right ankle, and his left ankle showed normal dorsiflexion and plantar flexion 5/5.  Plaintiff had a stiff-legged gait based on his right ankle not flexing or extending.  He was unable to walk on his toes or his heels. Plaintiff could walk tandemly with great difficulty but showed supreme effort.  His range of motion exercises were presented and were relatively normal with the exception of the right ankle.  X-rays of plaintiff's right foot/ankle showed severe osteopenic changes of the right foot with sclerosis of the talus and obliteration of the tibial talar joint of the right foot. Lateral view showed sclerosis of the talus with arthritic changes in the talar joint and the distal metatarsal joints of the first and second phalanx.  There was evidence of osteopenia of the osseo structures of the right foot.  The impression was negative fracture of the right great toe.  Dr. Bury's overall impression was neurofibromatosis undiagnosed previously; fracture with sclerotic changes and residual pain in the right ankle; probable limited mental capacity; and tobacco use.  (Tr. 153-57.)

On August 2, 2005, agency consultant Dorothy Anderson, Ph.D., completed a Psychiatric Review Technique form.  She determined that plaintiff had no medically determinable impairment for a psychiatric condition, but that there was coexisting nonmental impairment(s) that required referral to another medical specialty.  In making

her determination, Dr. Anderson considered Dr. Bury's consultative examination.   Dr. Anderson found there was no indication of borderline or MR level function.   She noted that plaintiff was successful in his activities of daily living, was married and capable of maintaining relationship with his wife and with family and friends, and had a strong past relevant work history.  (Tr. 163-77; 187-90.)

Agency consultant Martin Kehrli, M.D., completed a physical residual functional capacity assessment dated August 1, 2005.   Dr. Kehrli found that plaintiff could occasionally lift and/or carry twenty pounds; frequently lift and/or carry ten pounds; stand and/or walk, and sit, for a total of about six hours in an eight-hour day; and was unlimited as to pushing and/or pulling, other than as shown for lift and/or carry.   He assessed plaintiff as limited to occasional climbing due to his stiff-legged gait based on his right ankle not flexing or extending.   Plaintiff was to avoid concentrated exposure to hazards, such as machinery, heights, etc.   Dr. Kehrli noted that plaintiff's activities of daily living included shopping, preparation of simple meals for himself and his wife, and he was able to tend to personal hygiene; he was unable to drive  because of his foot; plaintiff reported he could walk 150 feet before needing to stop and rest, and could be up and about for about two hours before needing to rest, and could go out of his home frequently to visit others.  (Tr. 178-85.)  The ALJ found that Dr. Kehrli's assessment was generally consistent with the record as a whole.  (Tr. 23.)

In August 2005, plaintiff visited Merle West Medical Center emergency room.  The reason for his visit was, "Rt leg poss tumor."   It was noted that plaintiff had multiple

lipomas all over his body, and he had bumped one on his right knee leaving a bruise.   On physical exam of plaintiff's extremities, it was noted that his foot was non-tender, his ankle was non-tender, with normal range of motion.   It was also noted that his gait was normal. No treatment was required at that time.  (Tr. 194–96.)

Plaintiff visited the emergency room in February 2006.  The reason for the visit was right hip pain.  Plaintiff complained of chronic pain in his right foot and ankle.  He was not on any medications.   A foot diagram indicated pain in the right foot from mid-foot to heel. It was noted that pain was severe, was exacerbated by walking movement, and relieved by nothing.  On physical exam of the lower extremities, tenderness was noted in his foot, ankle, and heel.  He had normal range of motion.  Gait and weight bearing was indicated as painful.  Plaintiff was prescribed Vicodin, and referred to Cascade East for evaluation and treatment of chronic pain.  (Tr. 191–93.)  As noted by the ALJ, there is no indication in the record that plaintiff sought any followup care.  (Tr. 23.)

On this record, the ALJ's discounting of plaintiff's credibility based upon the medical evidence and medical opinion evidence is supported by substantial evidence.

In June 2005, plaintiff completed a questionnaire indicating that he had pain for four hours everyday, and that he took 2 pain relievers every day.  He indicated that he could be up and active for two hours before he needed to rest, and that he could walk 150 feet without resting.  He did not require assistance in grooming or with household chores.  He indicated that he went out of his home to visit friends or relatives frequently. He indicated that he could prepare his own meals–prepared or canned foods; and that he cooked for

himself and his wife, although he had to sit down.  He stated that he cared for his pets; did laundry once weekly; and shopped for food.  He stated that he read, watched television, and went outside to play with his cat.  He did not drive because he did not have a license.  He was able to pay bills and handle a savings account.  (Tr. 98-100, 101-08.)

At his hearing on August 30, 2006, plaintiff testified that his last job was at Black Bear where he washed dishes.  He was let go because the business was too slow.  He was on his feet eight hours a day and had problems with his leg because he can't put any weight on it for that long a time.  Plaintiff testified that he could stand on his feet "Maybe 25 minutes at the most," and then he had to sit down.  (Tr. 218.)  He could sit twenty to thirty minutes at the most.  Plaintiff has to recline every day; he puts his leg up.  He does this for four or five hours every day.  He doesn't sleep well at night because his foot starts to swell and hurt "real bad."  (Tr. 219.)  Plaintiff does the dishes and cooks for his wife and eight-year-old child, which is hard for him to stand and do.  After he fixes breakfast, he sits down and watches television for one to four hours.  Plaintiff testified that he did not take any prescription or over-the-counter medications, but then testified that he takes "Probably six" Ibuprofen every day; this does "Not really" give him any kind of pain relief.  (Tr. 221.)  Plaintiff uses a cane every day.  He can walk to the mailbox and back, about twenty-five feet; this wears him out.  He wears a boot on his right foot every other day.  Plaintiff has a problem getting his foot to do what he wants it to do because it's crooked and every once in awhile it will start to twinge and shoot the pain up to his hip.  His hip also keeps him from working.  Plaintiff testified that he could probably lift a gallon of milk.  His wife did the

shopping.  He could not longer lift his child.  Plaintiff has tried to find other work and has

submitted applications since the Black Bear job, but he doesn't think there's any hope for

the future.  Plaintiff has good days and bad days; he has probably ten to fifteen bad days

in a month.  On bad days he can't do very much; he just sits down, and has to lie down,

too.  His household includes himself and his wife and daughter.  Plaintiff did not remember

telling Dr. Bury about a year previously that he could lift 100 pounds and carry eighty

pounds.  Plaintiff had a cane at the time he saw Dr. Bury.  The cane is not prescribed.  (Tr.

216-29.)

Although the evidence of plaintiff's activities may be interpreted in a way more

favorable to him, the ALJ's interpretation here is a reasonable one and is supported by

substantial evidence.  See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins

v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Thomas v. Barnhart, 278 F.3d 947, 959

(9th Cir. 2002).

The ALJ also noted inconsistencies in plaintiff's statements.  He noted that plaintiff

had first testified that he took nothing for his pain but then testified that he took six

Ibuprofen every day.  (See supra.)  The ALJ pointed out that plaintiff had told Dr. Bury that

he could lift 100 pounds and carry eighty pounds, which differed from his questionnaire

answers and hearing testimony.  (See supra.)  The ALJ also noted that Dr. Bury had stated

in his report in July 2005 that plaintiff did not use a cane, but that plaintiff testified that he

had a cane at the time he saw Dr. Bury.  (See supra.)  The ALJ noted that, at the hearing,

plaintiff first indicated that he lived with his wife and daughter and, after his cousin testified

15 - REPORT AND RECOMMENDATION

the plaintiff was separated from his wife, plaintiff testified that he was separated and had

moved into a camping trailer on his father's property.    Inconsistencies in a claimant's

statements is an appropriate consideration in determining credibility.    Burch, 400 F.3d at

680.

Plaintiff contends specifically that the ALJ erred by failing to consider that his

persistent efforts to obtain pain relief enhanced his credibility, as set forth in SSR 96-7p.

SSR 96-7p, see supra, provides in relevant part under the heading, "Medical Treatment

History":

> In general, a longitudinal medical record demonstrating an individual's
> attempts to seek medical treatment for pain or other symptoms and to follow
> that treatment once it is prescribed lends support to an individual's
> allegations of intense and persistent pain or other symptoms for the
> purposes of judging the credibility of the individual's statements. Persistent
> attempts y the individual to obtain relief of pain or other symptoms, such as
> by increasing medications, trails of a variety of treatment modalities in an
> attempt to find one that works or that does not have side effects, referrals
> to specialists, or changing treatment sources may be a strong indication that
> the symptoms are a source of distress to the individual and generally lend
> support to an individual's allegations of intense and persistent symptoms.

(fn. omitted.)

When discussing plaintiff's RFC in his decision, the ALJ states in pertinent part that

he, "considered all symptoms and the extent to which these symptoms can reasonably be

accepted as consistent with the objective medical evidence and other evidence, based on

the requirements of 20 CFR 404.1529 and 416.929 and SSRs 96-4p and 96-7p." (Tr. 21.)

Here, the ALJ conducted a thorough review of the record.    The record shows that Dr.

Heaton indicated in December 2004 that he would see plaintiff in the future with any

16 - REPORT AND RECOMMENDATION

problems. Dr. Heaton's records show that plaintiff was a "No Show" on March 28, 2005.

The next time plaintiff sought medical care relating to his right foot/ankle was in February

2006, when he went to the emergency room. Chart notes indicate that plaintiff was given

Vicodin and was referred to Cascade East for evaluation and treatment for chronic pain.

Plaintiff testified at the hearing that he had been taking Vicodin but that he cannot afford

the prescriptions for it. As the ALJ noted in his decision, there is no showing that plaintiff

followed up on the referral for evaluation and treatment for chronic pain. Plaintiff saw Dr.

Bury on an agency consultation. No other treatment records appear in the record.

The record shows that the ALJ considered the requirements of SSR 96-7p when he

made his credibility determination. On this record, there is nothing which indicates that

the ALJ failed to consider all the requirements of SSR 96-7p, including consideration of

plaintiff's attempts to seek medical treatment for pain or other symptoms.

On this record, the Court finds that the ALJ considered the requirements of SSR 96-

7p when assessing plaintiff's credibility, and that he gave clear and convincing reasons for

not fully crediting plaintiff's statements and testimony, which are supported by substantial

evidence in the record. The ALJ did not err in this regard.

**Lay witness testimony**

An ALJ must consider the testimony of friends and family members. Smolen, 80

F.3d at 1288. To disregard such testimony violates 20 C.F.R. §§ 404.1513(e)(2),

416.913(e)(2), which mandates consideration of observations by non-medical sources

regarding how an impairment affects a claimant's ability to work. See SSR 96-7p. "Lay

17 - REPORT AND RECOMMENDATION

testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." <u>Lewis v. Apfel</u>, 236 F.3d 503, 511 (9th Cir. 2001); <u>Stout v. Commissioner</u>, 454 F.3d 1050, 1053 (9th Cir. 2006); <u>Dodrill</u>, 12 F.3d at 919.

The ALJ found that, overall, the lay evidence was accepted as denoting limitations in plaintiff's function.  However, he further found that, to the extent the lay evidence sought to depict plaintiff as totally incapacitated and unable to work, that opinion was contrary to the medical evidence.

Plaintiff's brother, Jake Schorr, answered a questionnaire in June 2005, indicating that plaintiff sits and watches television, and tries to walk around but he cannot walk very well.  He stated that plaintiff cared for his wife, and cooked and cleaned the house; and cared for his cats.  Plaintiff did this without assistance.  He prepared meals daily and prepared easy meals.  Plaintiff did the laundry.  Plaintiff shopped for food and clothing once a month.  In answer to the question, "What was the disabled person able to do before his/her illness, injuries, or conditions that he/she can't do now?" Mr. Schorr answered, "no." He indicated that plaintiff could walk fifty yards and has to rest for approximately one hour before resuming walking. He indicated that plaintiff needed to use a cane and a brace/splint every day. (Tr. 109-17.)

Plaintiff's cousin, Douglas Eugene McClain, testified at the hearing that plaintiff was a hard worker and that, "now he can't do anything"; he can't walk on it and can't do any lifting.  He testified that, if plaintiff spends any time on his foot, it requires a couple of

hours recuperation; sometimes plaintiff can just rest it, but a lot of times he lays down. Plaintiff can walk about 100 yards and then requires some rest. Plaintiff takes over-the-counter Ibuprofen. Mr. McClain testified that he drives plaintiff around a lot. As to what plaintiff does on a daily basis, Mr. McClain testified that, "I think he's just under a stress all day long, you know, worrying about how he's going to pay bills, how he's going to eat." Plaintiff didn't do any strenuous activity that Mr. McClain was aware of; plaintiff watches television. Plaintiff uses the cane most of the time. (Tr. 229-33.)

An ALJ may discount lay testimony if it conflicts with the medical evidence. <u>Lewis</u>, 236 F.3d at 511; <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1218 (9th Cir. 2005). Here, the ALJ recounted the medical evidence and, contrary to plaintiff's assertion that the ALJ ignored witness statements, he recounted and considered these witnesses' statements. The ALJ gave a reason for discounting the lay testimony germane to that testimony. The ALJ did not err in this regard.

## 20 C.F.R. § 404.1529 "observations by our employees"

Plaintiff asserts that the ALJ erred by failing to consider the "observations by our employees" as required by 20 C.F.R. § 404.1529. However, plaintiff does not state how the ALJ erred in this regard and the Court does not discern any error from a review of the record.

## <u>RECOMMENDATION</u>

Based on the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), it is recommended that the decision of the Commissioner be affirmed.

_**This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals**_. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the district court's judgment or appealable order. _**Objections to this Report and Recommendation, if any, are due by May 14, 2008. If objections are filed, any responses to the objections are due 14 days after the objections are filed**_. Failure to timely file objections to any factual determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.

DATED this ____ 29 ____ day of April, 2008.

MARK D. CLARKE
United States Magistrate Judge

20 – REPORT AND RECOMMENDATION